UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ALBERT GRAYER | * | CIVIL ACTION NO: 24-663-SDD-RLB |
| | * | |
| v. | * | JUDGE SHELLY DICK |
| ANDREW CUPIL; and | | |
| STATE OF LOUISIANA THROUGH | * | MAGISTRATE JUDGE |
| LOUISIANA DEPARTMENT OF | * | RICHARD BOURGEOIS |
| PUBLIC SAFETY AND CORRECTIONS | * | STATE OF LOUISIANA |

*********************************************

**MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

MAY IT PLEASE THE COURT:

Albert Grayer brought this action against Andrew Cupil asserting both federal civil rights violations and state law claims. Additionally, Albert Grayer asserted a claim for *respondeat superior* on the state law claims against the State. On August 14, 2024, the State removed this action fro state court to federal court waiving all 11th Amendment immunity. RD 1.

Although served with summons, Andrew Cupil has not filed an answer. As such, on October 14, 2025, a PD was entered. RD 51

On September 10, 2024, the State filed *Answer* wherein it asserted multiple inapplicable affirmative defenses at RD 9, at 5 of 8 including 1) no fault or negligence on be half of the State (¶ 30); 2) no fault on behalf of Cupil (¶ 31); 3) fault of third party and comparative fault (¶32); 4) sole fault of Albert Grayer (¶ 34); 5) failure to mitigate (¶ 35); 6) injuries caused by unrelated accident or cause (¶ 36); 7) immunity from liability by the state pursuant to La. R.S. 15:574.8 (¶ 37); 8) discretionary immunity pursuant to La. R.S. 92798.1 (¶ 39); 9) negligence of others pursuant to La. R.S. 9:2800 (¶ 40); and 10) any other immunity statute that the state has not pled, but that may apply (¶ 40).

This motion for partial summary judgment addresses ten of those "defenses." Because defendants have no basis in law or in fact for the ten defenses addressed in this motion, plaintiff is entitled to summary judgment on each of those defenses.

## I. Background Facts

## A. FACTS IN PETITION[1]

The Petition alleges that on February 5, 2024, the incident giving rise to this action occurred at Dixon Correctional Institute (DCI) in Jackson, Louisiana. At all relevant times, ALBERT GRAYER was an inmate housed at DCI. Defendant Andrew Cupil was employed by the Louisiana Department of Public Safety and Corrections as a Major and was acting within the course and scope of his employment and under color of state law. Exs 1 and 2.

The Petition alleges that at approximately 10:00 a.m., Mr. Grayer was walking to a scheduled call-out near the Unit 1 bullpen when M.Sgt. Jones asked, "Where the fuck is your ugly ass going?" Mr. Grayer repeated the statement back to her and began walking away. M.Sgt. Jones and Major Cupil immediately approached him, and Major Cupil asked, "Who the fuck do you think you are talking to?" Mr. Grayer was escorted back inside, where Major Cupil drew his chemical agent and threatened to spray him if he said another word. Exs 1 and 2.

The Petition alleges that Major Cupil then physically assaulted Mr. Grayer, repeatedly punching him in the face and head in view of a surveillance camera. As Mr. Grayer attempted to protect himself, his hand was broken and a knuckle was displaced. The assault continued despite M.Sgt. Jones yelling for Major Cupil to stop and ended only after another officer intervened. As a result of the attack, Mr. Grayer sustained injuries including facial trauma, damage to his left eye, loose teeth, a broken hand, head disfigurement, recurring seizures, and persistent headaches. Exs 1 and 2.

The Petition alleges that following the assault, Mr. Grayer was taken to the prison infirmary and placed in lockdown. After suffering a seizure the following day, he was transported to Our Lady of the Lake Regional Medical Center for treatment. Although Major Cupil was subsequently arrested and terminated from his employment, Mr. Grayer has not

---

[1] A copy of the Petition does not appear to have been attached to the removal.

received adequate medical care for his injuries and continues to suffer lasting effects despite seeking treatment. To the extent any failure-to-mitigate defense is asserted, any lack of appropriate medical care is attributable to DCI and the Louisiana Department of Public Safety and Corrections. Upon information and belief, Major Cupil assaulted several other inmates. Exs 1 and 2.

Louisiana law prohibits the use of corporal punishment against inmates. See La. R.S. 15:829; LAC 22:3309(B); and Department Regulation No. C-02-006(6)(b)-(d). These authorities require the Department of Public Safety and Corrections to maintain rules governing inmate discipline while expressly prohibiting corporal punishment. Violation of these statutory and regulatory provisions is evidence of unreasonable conduct.

**B. Declaration of Albert Grayer**

Mr. Grayer declared that the facts found in his Petition are true and correct under penalty of perjury. He further described what is shown in the video. Ex 2. The video footage labeled "Angle 1 – Bullpen Holding Cage" and "Angle 2 – Bullpen Holding Cage" that was received through discovery in the Albert Grayer matter shows an attack by Cupil, who was in uniform and obviously in the course and scope attacking Albert Grayer. At approximately 00:30, Albert Grayer entered the Bullpen holding cage area with another inmate and began walking toward the exit door. At approximately 00:36, Mr. Grayer returned to the Bullpen area and spoke with Master Sergeant Cami Jones, who appeared to be yelling at him. At approximately 00:40, Mr. Grayer again walked out of the Bullpen holding cage area. At approximately 00:42, Master Sergeant Jones and Major Andrew Cupil pulled Mr. Grayer back inside the Bullpen holding cage area. At approximately 00:45, after Mr. Grayer was pulled back inside, Major Cupil removed a can of spray and appeared to point it at Mr. Grayer. At that point, Mr. Grayer was no longer visible on the camera identified as "Angle 2 – Bullpen Holding Cage."

The "Angle 1 – Bullpen Holding Cage" camera continues to show the incident. At

approximately 00:45, Major Cupil removed his can of spray and appeared to threaten Mr. Grayer with it. At approximately 00:47, Mr. Grayer was standing against the wall while Major Cupil attempted to open the cage and continued yelling at him. At approximately 00:54, Major Cupil opened the cage, turned toward Mr. Grayer, and struck him. At approximately 00:56, Major Cupil struck Mr. Grayer in the face and head multiple times while Major Cyce Hollier came from behind Mr. Grayer and began pulling him away from the hold Major Cupil had on him. At approximately 01:04, additional guards arrived and attempted to separate Major Cupil from Mr. Grayer. At approximately 01:15, Major Cupil returned and appeared to continue yelling at Mr. Grayer while he stood against the wall. At approximately 01:19, other guards escorted Major Cupil away while Warden Haley placed Mr. Grayer inside the cage. By approximately 01:25, everyone had left the area except for Mr. Grayer, who remained inside the cage.

**C. Video**

Darren Sibley viewed the video and described what he saw in the video under penalty of perjury, which is corroborated by the declaration of Albert Grayer.[2]

**D. Medical Records**

Albert Grayer was struck in the face and head after which he was assessed in medical for head swelling, bleeding and injury to his right hand.[3] Due to the incident he had a childhood seizure condition that had become benign, but which active due to the strikes to the head with increased seizure activity.[4] The increased seizure activity was termed "breakthrough seizure secondary to recent head trauma."[5] He continues to have problems with the seizures, his vision and continues to treat.

---

[2] Ex 3, Declaration of Darren Sibley.

[3] Ex 4, Medical Records at 293.

[4] Ex 4, Medical Records at 355-356.

[5] Ex 4, Medical Records at 356.

## II. LAW AND ARGUMENT

Affirmative defenses are properly disposed of by summary judgment.

> But "[a]n affirmative defense places the burden of proof on the party pleading it." F.T.C. v. Nat'l Bus. Consultants, Inc., 376 F.3d 317, 322 (5th Cir. 2004). Wells Fargo's argument thus "runs afoul of well-established authority confirming that [Wells Fargo] may not rest on [its] pleading and must provide evidence showing there is a genuine dispute of material fact." See Northfield Ins. Co. v. Pizano, No. 2:19-cv-1198, 2023 WL 4107975, at *4 (E.D. Cal. June 21, 2023) (applying Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), in the affirmative defense context). Indeed, Federal Rule of Civil Procedure 56 "requires the nonmoving party to go beyond the pleadings and ... designate specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324, 106 S.Ct. 2548 (internal quotation marks omitted). Thus, while an affirmative defense will defeat summary judgment in favor of a plaintiff if the defendant supports each element of the defense with summary judgment evidence, the plaintiff is not obligated to negate each element of an affirmative defense to succeed at the summary judgment stage. See McCollough v. Johnson, Rodenberg & Lauinger, 587 F. Supp. 2d 1170, 1176 (D. Mont. 2008).[6]

Each unsupportable defense should be dismissed on summary judgment for lack of either legal or factual basis and, here, a failure to properly oppose the summary judgment. The affirmative defenses should not have been asserted without a basis in law or fact and each should be warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law or that the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

The State asserted multiple inapplicable affirmative defenses at RD 9, 1) no fault or negligence on be half of the State (¶ 30); 2) no fault on behalf of Cupil (¶ 31); 3) fault of third party and comparative fault (¶ 32); 4) sole fault of Albert Grayer (¶ 34); 5) failure to mitigate (¶ 35); 6) injuries caused by unrelated accident or cause (¶ 36); 7) immunity from liability by the state pursuant to La. R.S. 15:574.8 (¶ 37); 8) discretionary immunity pursuant to La. R.S. 92798.1 (¶ 39); 9) negligence of others pursuant to La. R.S. 9:2800

---

[6] Occidental Petroleum Corp. v. Wells Fargo Bank, N.A., 117 F.4th 628, 643 (5th Cir. 2024).

(¶ 40); and 10) any other immunity statute that the state has not pled, but that may apply (¶ 40), each of which should be stricken.

**1. Plaintiff is entitled to summary judgment on no fault or negligence on be half of the State (¶ 30);**
**2. Plaintiff is entitled to summary judgment on no fault on behalf of Cupil (¶ 31);**
**4. Plaintiff is entitled to summary judgment on the affirmative defense that the incident was caused by the sole fault of Albert Grayer (¶ 34)**

The State was sued only on respondeat superior for its vicarious liability for the state law battery claim. As set forth in the Plaintiff's Petition [Ex 1], there is no respondeat superior pled on the federal constitutional claims. As to tort liability, on battery under state law:

> Tort liability in Louisiana is based on La. Civ. Code art. 2315, which provides, in pertinent part, "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." A battery is defined as an intentional offensive conduct with another person without that person's consent. Caudle v. Betts, 512 So.2d 389, 391 (La. 1987). In a civil battery case, the burden of proof is on the plaintiff to establish that a battery was committed. Frazer v. St. Tammany Parish School Board, 99–2017, p. 8 (La. App. 1 Cir. 12/22/00), 774 So.2d 1227, 1234, writ denied, 2001–0233 (La.3/23/01), 787 So.2d 1001.[7]

The State of Louisiana was sued in its capacity as the employer of the correctional officer Defendant, Andrew Cupil, for vicarious liability under the doctrine of respondeat superior on the State law claims asserted in this case against Andrew Cupil. The respondeat superior claim immediately follows the negligence claims.

"The employer's liability is predicated on whether the tortious conduct of the employee is 'so closely connected in time, place, and causation to his employment-related duties as to be regarded as a risk of harm fairly attributable to the employer's business, as compared with conduct instituted by purely personal considerations entirely extraneous to the employer's interests.'[8] Because of the unlimited contexts in which the issue may arise,

---

[7] Landry v. Bellanger, 2000-2029 (La. App. 1 Cir. 3/28/02), 813 So. 2d 598, 604, writ granted, 2002-1443 (La. 10/14/02), 827 So. 2d 409, and rev'd, 2002-1443 (La. 5/20/03), 851 So. 2d 943.

[8] LeBrane v. Lewis, 292 So. 2d 216, 218 (La. 1974)

we have stated that an employee's conduct is generally within the course and scope of his employment if the conduct is of the character and nature that he is employed to perform, occurs substantially within the authorized limits of time and space, and is activated at least in part by a purpose to serve the employer."[9] Here, Mr. Albert Grayer alleged that all state actor was in the course and scope at the time of their tortious conduct.

Here, Albert Grayer alleged that Andrew Cupil attacked him and caused serious injuries while Albert Grayer was not attempting to flee, resisting or attacking anyone. The elements of a battery claim were properly pled in this case. The beating was a battery under state law.

> Tort liability in Louisiana is based on La. Civ. Code art. 2315, which provides, in pertinent part, "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." A battery is defined as an intentional offensive conduct with another person without that person's consent. Caudle v. Betts, 512 So.2d 389, 391 (La.1987). In a civil battery case, the burden of proof is on the plaintiff to establish that a battery was committed. Frazer v. St. Tammany Parish School Board, 99–2017, p. 8 (La. App. 1 Cir. 12/22/00), 774 So.2d 1227, 1234, writ denied, 2001–0233 (La.3/23/01), 787 So.2d 1001.[10]

Here, Albert Grayer offers testimony sufficient to show that he was physically assaulted without cause or consent, which resulted in injuries, which suffices to plead a claim for battery under state law.

As such, the State placed Andrew Cupil, who at the time was a correctional officer with authority over all in the inmates in the infirmary and in a position of power and authority over Albert Grayer, an inmate, who is obligated to comply with all orders, the DOC/DCI are answerable for the battery and assault by Andrew Cupil under a theory of vicarious liability.

Turning to the law, "[a]t common law, the Latin phrase respondeat superior

---

[9] Brasseaux v. Town of Mamou, 752 So. 2d 815, 820 (La. Jan. 19, 2000)

[10] Landry v. Bellanger, 2000-2029 (La. App. 1 Cir. 3/28/02), 813 So. 2d 598, 604, writ granted, 2002-1443 (La. 10/14/02), 827 So. 2d 409, and rev'd, 2002-1443 (La. 5/20/03), 851 So. 2d 943.

> ("let the master answer") denotes the employer's liability for the employee's tort committed in the course and scope of employment." 1 Frank L. Maraist, et al., Louisiana Tort Law § 13.02 (2021). "The foundation of respondeat superior is the employee's tort. Thus, where the employee was not guilty of a tort, the employer cannot be vicariously liable." Id. "Louisiana Civil Code Article 2320 codifies the concept, providing, in part: [']Masters and employers are answerable for the damage occasioned by then-servants and overseers, in the exercise of the functions in which they are employed [.]['] " Id.[11]

In Penn v. St. Tammany Par. Sheriff's Off., 2002-0893 (La. App. 1 Cir. 4/2/03), 843 So. 2d 1157, 1161, the court found that an employer is liable for a battery committed by its officers writing, "The use of force by law enforcement officers is thus scrutinized by considering the "reasonable force" standard established by La. C.Cr.P. art. 220. Factors in determining whether the force exerted was reasonable under the circumstances entail: the known character of the arrestee; the risks and dangers faced by the officer; the nature of the offense or behavior involved; the chance of escape if the particular means are not employed; the existence of alternative methods of arrest or subduing the arrestee; the physical strength, size and weaponry of the officers as compared to that of the arrestee; and the exigencies of the moment. See Kyle v. City of New Orleans, 353 So.2d 969, 973 (La.1977). Excessive force transforms ordinarily protected use of force into an actionable battery, rendering the defendant officer and his employer liable for damages. Ross, 479 So.2d at 511."

In Ross v. Sheriff of Lafourche Par., 479 So. 2d 506, 511 (La. App. 1st Cir. 1985), the court wrote:

> Wall and Martin, on the other hand, physically seized and arrested plaintiff. Wall grabbed plaintiff on numerous occasions and placed plaintiff under arrest. He also fought with plaintiff. Martin assisted Wall in restraining plaintiff and helped to place handcuffs on him. As we have previously determined that the arrest of plaintiff was unlawful, defendants Wall and Martin are liable to plaintiff for damages for false arrest. Additionally, because the initial arrest was unlawful, the physical attack of plaintiff by Martin and Wall constitutes a battery. See Norrell v. City of Monroe, supra.[12] Furthermore, the actions of

---

[11] Imani v. City of Baton Rouge, 614 F. Supp. 3d 306, 383 (M.D. La. 2022).

[12] Referencing, Norrell v. City of Monroe, 375 So.2d 159 (La. App. 2nd Cir.1979).

> the police officers also render their employer, Lafourche Parish Sheriff Duffy Breaux, liable for plaintiff's injuries. Taylor v. City of Baton Rouge, 233 So.2d 325 (La. App. 1st Cir.1970), writ denied, 256 La. 255, 236 So.2d 32 (1970); Coutee v. American Druggist Ins. Co., 453 So.2d 314 (La. App. 3rd Cir.1984), writ denied, 458 So.2d 477 (La.1984).

In Latullas v. State, 94-2049 (La. App. 1 Cir. 6/23/95), 658 So. 2d 800, 803–04, the state was held vicariously liable for the rape of an inmate by a guard who was on duty and in uniform at the time of the assailed. The award was $150,000.00 where a child was born of the union. An employer can be held vicariously liable for the intentional torts committed by its employees. La.Civ.Code art. 2320; Williams v. Butler, 577 So.2d 1113, 1116 (La. App. 1st Cir. 1991). The employer's liability extends to only those acts which are within the course and scope of employment. Lamkin v. Brooks, 498 So.2d 1068 (La.1986); Cousineau v. Johnson, 577 So.2d 152 (La. App. 1st Cir.) writ denied, 580 So.2d 379 (La. 1991). Because M.Sgt. Stafford Andrew Cupil was, at all times pertinent hereto, an employee of the State of Louisiana, the State placed M.Sgt. Stafford Andrew Cupil in a position of power and authority over Albert Grayer an inmate,[13] who is obligated to comply with all orders, the DOC/DCI is answerable for the battery and assault under a theory of vicarious liability.

In Anderson v. Louisiana ex rel. LA Dep't of Corr., No. CIV.A. 12-1821, 2013 WL 5707860, at *3 (W.D. La. Oct. 17, 2013), that court wrote:

> In addition, in the prison setting, Louisiana courts have held that it is the State, not the supervisor, who bears liability for the acts of its employee. See Latullas v. State, 658 So.2d 800, 804 (La. Ct. App.1995) (State, not warden, vicariously liable when DOC guard raped prison inmate); Becnel v. Charlet, 569 So.2d 9, 11 (La. Ct. App.1990) (State vicariously liable for acts of DOC prison guard). For these reasons, Warden McJimsey's motion to dismiss should be granted on this issue.

In Thompson v. France, No. CV 20-1842, 2020 WL 5761188, at *3 (E.D. La. Sept. 28, 2020), that Court found that where the employer places the employee in a unique

---

[13] Ex 3: Cell Block Book shows on December 5, 2021, Andrew Cupil was assigned to Dorm A.

position of having such authority and control over an inmate so as to provide the opportunity to use that power for sex, or in this case an unprovoked use of force, the employer is vicariously liable, writing:

> In Latallus v. State, the Louisiana First Circuit Court of Appeal was asked to decide whether the State may be held vicariously liable for the rape of a female inmate by a male guard. 658 So.2d 800. The court noted that the prison guard's contact with the inmate occurred while the guard was on duty and charged with the supervision of the inmate. Id. at 804. The court also reasoned that the guard was able to separate the inmate from her fellow inmates in order to commit the act of rape due to his apparent authority derived from his employment. Id. Thus, the court held the State vicariously liable for the rape because the prison guard was "actuated" by the State through his control and supervision of the inmates, and the opportunity to commit the rape arose from his apparent authority derived from his employment. Id. at 804-805.
>
> The facts and reasoning of Latallus are highly compatible with the present case. Plaintiff was allegedly sexually abused by Mr. France while under his supervision pursuant to his employment. Mr. France was allegedly able to coerce Plaintiff into "allowing" the sexual abuse by threatening Plaintiff with his apparent authority. Thus, like the prison guard in Latallus, Mr. France was actuated by Tangipahoa Parish through his control and supervision of Plaintiff, and Mr. France's opportunity to commit the sexual abuse was derived directly from his apparent authority over Plaintiff. For this reason, the Court finds that Tangipahoa Parish's motion to dismiss Plaintiff's vicarious liability claim should be denied.

Thus, as a matter of fact and law vicarious liability was properly pled and facts properly supported. As such, respondeat superior will apply to this case.

Defendants cited to Dickerson v. Piccadilly Restaurants, Inc., 1999-2633 (La. App. 1 Cir. 12/22/00), 785 So. 2d 842, [RD 33-2, at 5] which involved a cook stabbing another food service cook employee (akin to an inmate on inmate attach). Dickerson did not involve a special relationship that exists between a correctional officer and an inmate or a police officer and a private citizen, where one has authority over the other described as "control and supervision." In Latullas, the court reasoned that the guard was able to separate the inmate from her fellow inmates in order to commit the act of rape due to his apparent authority derived from his employment.

Here, Andrew Cupil was able to place his hands on Albert Grayer and use force due

to his employment placing him in the position to do so and in the position to give orders and take action for any noncompliance, which allowed Andrew Cupil an opportunity to batter Albert Grayer. Here, the DOC, the employer, placed the employee, Andrew Cupil, in a unique position of having such authority and control over an inmate so as to provide the opportunity for the use of force. Here, the use of force was unprovoked and unjustified.

Respondeat superior applies. Any defense that seeks a finding that it does not apply to the state law claims must be stricken on summary judgment.

**3. Plaintiff is entitled to summary judgment on the State's affirmative defense of comparative fault defense to the federal claims pled in this matter for a violation of Eighth Amendment Right to be free from excessive and unnecessary force that causes injury found in ¶ 32;**

**9. Plaintiff is entitled to summary judgment on the State's affirmative defense of negligence of others pursuant to La. R.S. 9:2800 (¶ 40)**

La. R.S. 9:2800[14] applies to liability for defects in buildings, and does not appear to apply to this case. In the Answer in Paragraphs 32 and 40, the State asserts that Mr. Albert Grayer's accident was the result of joint fault of other persons who contributed to injuries" and was caused by the sole fault and/or negligence of Plaintiff, Albert Grayer. The State has no evidence it may offer to support either defense. However, "it is well-settled that comparative negligence does not apply to damages for federal constitutional rights violations."[15] The McHugh court[16] explained:

> Section 1988 authorizes a federal court to use state law to facilitate but not to hinder proceedings in the vindication of civil rights. Lefton v. City of Hattiesburg, 333 F.2d 280, 284 (5th Cir. 1964). A state law should be disregarded if it is inconsistent with the policy underlying § 1983: deterrence and compensation. See Board of Regents v. Tomanio, 446 U.S. 478, 489, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980). The protection afforded under § 1983 was not intended to differ from state to state, and federal, not state, common

---

[14] "(A.) A public entity is responsible under Civil Code Article 2317 for damages caused by the condition of buildings within its care and custody."

[15] Blair v. Harris, 993 F.Supp.2d 721, 727 (E.D. Mich. 2014); McHugh v. Olympia Entertainment, Inc., 37 Fed.Appx. 730 (6th Cir. 2002); Quezada v. County of Bernalillo, 944 F.2d 710, 721 (10th Cir. 1991); Clappier v. Flynn, 605 F.2d 519, 530 (10th Cir. 1979).

[16] McHugh v. Olympia Entertainment, Inc., 37 Fed.Appx. 730 (6th Cir. 2002).

> law governs the determination of damages in a § 1983 action. Busche v. Burkee, 649 F.2d 509, 518 (7th Cir. 1981). To apply comparative fault statutes in civil rights actions would result in the protection afforded under § 1983 to differ from state to state and would be inconsistent with the underlying policy of deterrence and compensation. Id.

Moreover, even if comparative negligence did apply to plaintiff's constitutional rights claims, defendants have no evidence to support any allegation of third party or comparative fault. Because defendants have the burden of proving third party and comparative fault, and because defendants lack any evidence to support such a defense, plaintiff is entitled to summary judgment on the defense of comparative fault as applied to the federal claim.

**5. Plaintiff is entitled to summary judgment on the affirmative defense of failure to mitigate (¶ 35);**

**6. Plaintiff is entitled to summary judgment on defendants' defense that Plaintiff's alleged injuries were caused by unrelated medical conditions pled in ¶ 36.**

The State has the burden of proof on its affirmative defenses. As such, the state may offer no medical record to support these defenses of failure to mitigate and that the injury was caused by unrelated medical conditions. The medical records attached at Exhibit 4 show that Albert Grayer had a seizure condition that was benign for years but triggered by the blows to the head. Defendants have no proof to support these affirmative defense.

**7. Plaintiff is entitled to summary judgment on the affirmative defense of immunity from liability by the state pursuant to La. R.S. 15:574.8 (¶ 37)**

La. R.S.15:574.8 is entitled "Parole officers; powers of arrest; summary arrest and detention of parolees," which appears wholly inapplicable to this case.

**8. Plaintiff is entitled to summary judgment on defendant's Discretionary Function Immunity Defense (La. R.S. 15:574.8 and 9:2798.1) found at ¶ 39. [RD 9, at 12]**

Defendants argue that they are entitled to immunity pursuant to Louisiana R.S. 9:2798.1, which provides immunity to public entities and their employees "based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers

and duties." However, R.S. 9:2798.1(C)(2) expressly states that the immunity granted by it is "not applicable . . . [t]o acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct. Thus, because the allegations contained in this lawsuit allege intentional misconduct (as is required in every civil rights action, as there is no liability pursuant to 42 U.S.C. § 1983 due to negligence), La. R.S. 2798.1 is not applicable by its own terms.[17]

The state law claims are for battery and/or negligent handling of an inmate. Defendants invoke La. R.S. 9:2798.1, claiming Andrew Cupil exercised discretion while at the same time claiming the following:

> The Louisiana Department of Public Safety and Corrections denies all claims by Plaintiff herein. Further, the State avers that any actions taken by Andrew Cupil were criminal acts. Accordingly, vicarious liability does not attach to the State in this scenario and the State is not liable for any alleged damage caused.[18]

But state law and Department regulations stripped Andrew Cupil of any such discretion to use force on an inmate who was not resisting and not attempting to flee. The Employee Handbook issued by the DOC[19] provides:

> 3. **ABUSE OF OFFENDERS, CORPORAL PUNISHMENT OR USE OF UNNECESSARY OR EXCESSIVE FORCE:**
>
> No employee shall abuse an offender for any reason. Forms of abuse include, but are not limited to, the following actions:
>
> • Verbal abuse;
> • Harassment;
> • Damaging, destroying, or otherwise abusing an offender's belongings through willful act or gross negligence; and
> • Physical abuse.
>
> Force may be used only in accordance with Department Regulation No. OP-A-16 "Use of Force" and unit procedures. The force used shall be

---

[17] See Besson v. Webre, 738 F.Supp.2d 657 (W.D. La. 2009).

[18] RD 37, at 3 ¶ B (2).

[19] Ex 5 CORRECTIONS SERVICES EMPLOYEE MANUAL LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, at 41-42, Part 1 Employee Rules Rule 3.

> proportional to the threat and shall cease when the resistance ceases. Necessary force may include the use of physical contact, chemical agents and munitions, restraints, electronic muscular disruption devices, less lethal weapons, and firearms.
>
> In addition, Department Regulation No. OP-A-16 "Use of Force" gives specific guidelines relative to: Self-defense, defense of others (whether employees, offenders, or visitors), prevention of serious damage to property, prevention of the commission of a crime (including but not limited to escape), and enforcement of rules and regulations to the extent necessary to reach compliance.
>
> **NOTE:** The following uses of force are considered abuse and are expressly prohibited:
>
> • **CORPORAL PUNISHMENT -** The infliction of physical pain on an offender for punishment is **ABSOLUTELY FORBIDDEN**;
>
> • **UNNECESSARY FORCE -** Force that cannot reasonably be justified by the facts of the situation is **ABSOLUTELY FORBIDDEN**;
>
> • **EXCESSIVE FORCE -** Force beyond that which is reasonable and apparently necessary to control a situation where some force is needed is **ABSOLUTELY FORBIDDEN**.

The attack caused recurrence of seizure activity, consistent headaches, injury to his face, damage to the left eye, loose teeth, broken hand, and disfigurement of his head. ALBERT GRAYER was taken to the infirmary and then placed in lockdown when he had the first seizure. It was not until the next day he was taken to OLOL for treatment. Major Cupil was arrested and terminated.[20]

La. R.S. 15:829, which allows the Secretary of the Louisiana Department of Public Safety and Corrections to enact rules and regulations governing inmates and guards, provides that corporal punishment of inmates is forbidden. See also, LAC 22:3309 (B) and see Department Regulation No. c-02-006 (6)(b)(c)(d).

> A. The secretary of the Department of Public safety and Corrections shall prescribe rules and regulations for the maintenance of good order and discipline for inmates sentenced to the legal custody of the department whether housed in local or state facilities, which rules and regulations shall include procedures for dealing with violations thereof. A copy of such rules

---

[20] Ex 1 ¶¶ 13-14 and Ex 2.

and regulations shall be furnished each inmate. **Corporal punishment is prohibited.**

Violation of a state statute evidences unreasonable conduct.

The Fowler v. Roberts two-step test is controlling:

* If a policy prescribes a specific course of action, discretionary immunity is unavailable.
* Even if discretion exists, immunity only applies where decisions are grounded in social, economic, or political policy.

Major Cupil then attacked ALBERT GRAYER punching him in the face and head in front on the camera. When ALBERT GRAYER tried to block the blows his hand was broken and knuckle knocked out of place. The beating rapidly continued as M.Sgt. Jones screamed for Major Cupil to stop. The attack continued until another officer arrived and shielded ALBERT GRAYER from Major Cupil.[21]

Andrew Cupil's actions—punching and a vicious attack a restrained inmate—were operational, not policy-driven. (See Doe v. ABC School, 316 So.3d at 1099-1100.) These are precisely the kinds of ministerial duties for which immunity does not apply.

The DCI has adopted the DOC Use of Force policy found in Department Regulation C-02-006. Exs 6 and 7. The Use of Force Policy at 2 (B) states that force is excessive when inappropriate to the circumstances either during or in the aftermath of an incident.. The DCI regulation requires "reasonable force" as only that necessary under he circumstances. As shown by Exs 6 and 7, the use of force and amount of force that may be used are strictly circumscribed by the regulations for all situations. The regulations do not give the option to punch and attack an inmate in full restraints. Moreover, as shown by Ex 8, DOC/DCI policy on Disciplinary Procedures, Andrew Cupil had no authority to discipline ALBERT GRAYER without his first being allowed a hearing and even then the

[21] Ex 1 ¶¶ 11-12 and Ex 2.

disciplinary would not be meted by the officer involved in the incident.

Andrew Cupil and the DOC have ignored policies. Aucoin v. Larpenter, 2020-0792 (La. App. 1 Cir. 4/16/21), 324 So. 3d 626, 637–38, writ denied, 2021-00688 (La. 9/27/21), 324 So. 3d 87, where reiterated the two part test of -

> **Fowler v. Roberts, 556 So.2d 1-15 (La. 1989) (on rehearing). First, if a statute, regulation, or policy prescribes a particular course of action, there is no choice or discretion involved, and the immunity does not apply.** However, when discretion is involved, the court must then determine whether that discretion is the kind that is shielded by the statutory immunity, that is, **discretion grounded in social, economic or political policy**. Doe v. ABC School, 2019-0983 (La. App. 1 Cir. 12/17/20), 316 So.3d 1086, 1099-1100, writ denied, 2021-00098 (La. 3/9/21), 312 So.3d 582.9 The immunity statute **does not protect operational governmental decisions**, but only confers immunity for discretionary decisions based on social, economic, or political concerns. In other words, when the government acts negligently for reasons unrelated to public policy considerations, it is liable to those it injures. Dominique, 313 So.3d at 315-16. [Emphasis added]

Discretionary immunity does not apply to the claims under state law that Mr. Andrew Cupil battered Albert Grayer. The defense must be stricken.

Even if R.S. 9:2798.1 provided immunity against intentional misconduct, it "does not protect against legal fault or negligent conduct at the operational level, but only confers immunity for policy decisions; i.e. decisions based on social, economic, or political concerns." Lockett v. New Orleans City, 639 F.Supp.2d 710, 744 (E.D. La. 2009), quoting, Saine v. City of Scott, 819 So.2d 496 (La. App. 3 Cir. 2002) (citing, Chaney v. Nat. R.R. Passenger Corp., 583 So.2d 926, 929 (La. App. 1 Cir. 1991)). Thus, "[t]he exception protects the government from liability only at the policy making or ministerial level, not at the operational level." Id., quoting Fowler v. Roberts, 556 So.2d 1, 15 (La.1989). Thus, the immunity granted by R.S. 9:2798.1 is not available to an arresting officer defending a wrongful arrest claim, because his actions take place at the operational level, rather than at the policy making or ministerial level. Id.

Moreover, in Disedare v. Brumfield, No. CV 22-2680, 2024 WL 1092833, at *14 (E.D. La. Mar. 13, 2024), *opinion vacated in part on reconsideration*, No. CV 22-2680, 2024

WL 1514650 (E.D. La. Apr. 8, 2024), of discretionary immunity, that Court wrote:

> To the contrary, Louisiana law is clear that "[t]he immunity offered by Louisiana's discretionary immunity statute is ... an affirmative defense which must be specifically pleaded in the defendant's answer." "As such, the defendant bears the burden of proving that this statutory immunity applies."191 Indeed, unlike Defendants' qualified immunity defense against Plaintiff's claims arising under the U.S. Constitution, in Louisiana "[t]he government has the burden of proving the [statutory] immunity [defense] applies as the exception is in derogation of the Louisiana Constitution's waiver of sovereign immunity."
>
> Because the burden is on the Defendants, the proper inquiry at the summary judgment stage is whether Defendants show there is no genuine issue of material fact as to the elements of their affirmative statutory immunity defense and that they are entitled to judgment as a matter of law.193 In determining whether statutory immunity shields a defendant from tort liability, Louisiana courts employ a two-step test:
>
> First, if a statute, regulation, or policy prescribes a particular course of action, there is no choice or discretion involved, and the immunity does not apply. However, when discretion is involved, a court must then determine whether that discretion is the kind that is shielded by the statutory immunity, that is, discretion grounded in social, economic or political policy. [Footnotes omitted]

Because La. R.S. 9:2798.1 is clearly inapplicable to this case as a matter of law, plaintiff is entitled to summary judgment dismissing the State's defense of discretionary immunity with prejudice.

**10. Plaintiff is entitled to summary judgment on defendants' defense that they are entitled to any other immunity statute that was not pled ¶ 40.**

Federal Rule of Civil Procedure 8(c) indicates that affirmative defenses must be raised in the first responsive pleading, which here would have been the answer (or the motion to dismiss). Instead, the city waited until its summary judgment motion to raise § 253(c). Statutory exemptions must be pleaded as affirmative defenses.[22]

This is a frivolous defense. All affirmative defense must be pled. Moreover, the Defendant bears the burden of proof on all affirmative defenses. The Plaintiff is unable to defend against these frivolous and vague assertions. The defense should be stricken.

---

[22] See Oden v. Oktibbeha Cnty., 246 F.3d 458, 467 n.10 (5th Cir. 2001).

### A. Qualified immunity does not apply to state law claims

State law claims do not involve a constitutional violation; thus, the qualified immunity test does not apply. Qualified immunity does not apply to the state law claims pled in this case.[23]

> Federal qualified immunity does not apply to state-law claims, see Brown v. Miller, 519 F.3d 231, 238–39 (5th Cir. 2008), and the officers have not briefed the argument that they are entitled to qualified immunity as a matter of Texas law. Our jurisdiction extends only to issues concerning the denial of qualified immunity, and the officers have not framed this issue in that light. Burnside, 773 F.3d at 626 n.1. We therefore do not address this topic.

Tort liability in Louisiana is based on La. Civ. Code art. 2315, which provides, in pertinent part, "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." A battery is defined as an intentional offensive conduct with another person without that person's consent. Caudle v. Betts, 512 So.2d 389, 391 (La. 1987). In a civil battery case, the burden of proof is on the plaintiff to establish that a battery was committed. Frazer v. St. Tammany Parish School Board, 99–2017, p. 8 (La. App. 1 Cir. 12/22/00), 774 So.2d 1227, 1234, writ denied, 2001–0233 (La.3/23/01), 787 So.2d 1001.[24]

### B. Qualified Immunity on federal claims

Here, Albert Grayer pled a violation of 42 USC § 1983 for the underlying violations of his 8th Amendment Rights as to Andrew Cupil and not the state.

As to the 8th Amendment, the facts of Wingard v. Louisiana through Dep't of Pub. Safety & Corr., 594 F. Supp. 3d 704, 722–23 (M.D. La. 2022), are somewhat similar to the facts of this case. In Wingard, a prisoner housed at LSP filed a state court lawsuit alleging federal and state law constitutional and tort claims against state Department of Public Safety and Corrections and LSP, against a warden and assistant warden in their official

---

[23] Tuttle v. Sepolio, No. 22-20279, 2023 WL 3635817, at *4 (5th Cir. May 23, 2023).

[24] Landry v. Bellanger, 2000-2029 (La. App. 1 Cir. 3/28/02), 813 So. 2d 598, 604, writ granted, 2002-1443 (La. 10/14/02), 827 So. 2d 409, and rev'd, 2002-1443 (La. 5/20/03), 851 So. 2d 943.

capacities, and against three correctional officers in their individual capacities. The State of Louisiana DOC removed that case to federal court, asserting federal question jurisdiction and then filed motions to dismiss and for a more definite statement.

In Wingard, this Court explained that the "qualified immunity defense, which operates to protect public officials who are performing discretionary tasks if their actions were objectively reasonable in light of clearly established law, requires a two-step analysis." This Court then took the facts as alleged in the light most favorable to Wingard to consider whether any of the Defendant's conduct as alleged violated the plaintiff's constitutional rights and whether the rights allegedly violated were clearly established at the time that the violation occurred, writing, "The clearly established standard does not mean that officials' conduct is protected by qualified immunity unless the very action in question has previously been held unlawful." Indeed, "[t]here need not be commanding precedent that holds that the very action in question is unlawful; the unlawfulness need only be readily apparent from relevant precedent in sufficiently similar situations." "[A]n official does not lose qualified immunity merely because a certain right is clearly established in the abstract." "Officials should receive the protection of qualified immunity unless the law is clear in the more particularized sense that reasonable officials should be on notice that their conduct is unlawful." Wingard, 594 F. Supp. 3d at 722–23. The material facts alleged by Wingard were that officer Holden unlocked the door of cell #12, and the unrestrained prisoner housed in that cell began to exit. Officers Smith and Woolfolk pushed that inmate back into cell #12 without incident and Officer Holden closed and locked the cell door. During this event, Plaintiff remained fully restrained by shackles and hand cuffs and was compliant with orders to remain where he was standing, all while wearing a white paper suicide gown. However, Holden ran down the tierway, yelling and ordering Plaintiff to get on the ground. Wingard attempted to get on the ground but had difficulty because of the restraints and gown. Officer Holden then tackled Plaintiff with "extreme force." Once Officer

Holden had Wingard pinned to the ground, Holden "repeatedly bash[ed]" Wingard's head into the floor, and then dragged Wingard by his restraint belt into nearby cell #9, ordered Wingard to the cell bars and, despite Plaintiff's restraints, sprayed Plaintiff's face and body with several bursts of chemical agent.

There this Court found qualified immunity did not lie for the actions of Officer Holden and the two other officers who were bystander, who failed to intervene. This Court found that at the time of this tackling Incident,

> [I]t was clearly established that an officer may not use force on a restrained, compliant inmate. Taking the facts in the light most favorable to Plaintiff, he was fully restrained and compliant when Holden tackled him, pinned him to the ground, and "bashed" his head into the floor." For § 1915A screening purposes, Plaintiff has asserted a colorable claim of excessive force against Holden. Wingard, 594 F. Supp. 3d at 724–25.

Here, the use of force, as in Wingard, served no penelogical purpose and was gratuitous corporal punishment. This Court Wingard, 594 F. Supp. 3d at 724, wrote:

> Force is considered excessive and violates the Eighth Amendment of the United States Constitution if it is applied maliciously and sadistically for the very purpose of causing harm rather than in a good faith effort to maintain or restore discipline. "An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Factors to be considered in determining whether an alleged use of force has been excessive include the extent of injury sustained, if any, the need for the application of force, the relationship between the need for force and the amount of force utilized, the threat reasonably perceived by prison officials, and any efforts made to temper the severity of a forceful response.

The 8th Amendment Rights was clearly established at the time of the violations of these rights in this case by Andrew Cupil.

**C. 11th Amendment immunity**

There is no theory of absolute immunity that applies in this case except 11th Amendment immunity to the State. The State of Louisiana was sued in its capacity as the employer of the correctional officer Defendants for vicarious liability under the doctrine of respondeat superior on the State law claims asserted in this case. The respondeat

superior claim immediately follows the negligence claims.

"The employer's liability is predicated on whether the tortious conduct of the employee is 'so closely connected in time, place, and causation to his employment-related duties as to be regarded as a risk of harm fairly attributable to the employer's business, as compared with conduct instituted by purely personal considerations entirely extraneous to the employer's interests.'[25] Because of the unlimited contexts in which the issue may arise, we have stated that an employee's conduct is generally within the course and scope of his employment if the conduct is of the character and nature that he is employed to perform, occurs substantially within the authorized limits of time and space, and is activated at least in part by a purpose to serve the employer."[26] Here, Mr. Albert Grayer alleged that the state actor, Andrew Cupil, was in the course and scope at the time of their tortious conduct. Moreover, he is shown on the video in a uniform.

The State of Louisiana removed this case to federal court, thus, waiving any claim to 11th Amendment immunity. RD 1

In Butler v. Denka Performance Elastomer, L.L.C., 16 F.4th 427 (5th Cir. 2021), there Major Ricky Williams and the State removed that case from state court to federal court on the basis of federal question asserted against Major Ricky Williams. The Fifth Circuit wrote, 16 F.4th at 436–37, "When the State removes a state court claim, it waives the 11th Amendment immunity. The state law claim is a pendent claim and the DOC is a pendant party pursuant to 28 USC § 1367. In a similar case where the state of Georgia removed a state court action against it to federal court, the Supreme Court, Lapides v. Bd. of Regents of Univ. Sys. of Georgia, 535 U.S. 613, 613–14, 122 S. Ct. 1640, 1640–41, 152 L. Ed. 2d 806 (2002), found supplemental jurisdiction and waiver of 11th Amendment Immunity writing:

---

[25] LeBrane v. Lewis, 292 So. 2d 216, 218 (La. 1974)

[26] Brasseaux v. Town of Mamou, 752 So. 2d 815, 820 (La. Jan. 19, 2000)

> Because this case does not present a valid federal claim against Georgia, see Will v. Michigan Dept. of State Police, 491 U.S. 58, 66, 109 S.Ct. 2304, 105 L.Ed.2d 45, the answer to the question presented is limited to the context of state-law claims where the State has waived immunity from state-court proceedings. Although absent a federal claim, the Federal District Court might remand the state claims against the State to state court, those claims remain pending in the federal court, which has the discretion to decide the remand question in the first instance. Thus, the question presented is not moot.
>
> (b) This Court has established the general principle that a State's voluntary appearance in federal court amounts to a waiver of its Eleventh Amendment immunity, Clark v. Barnard, 108 U.S. 436, 447, 2 S.Ct. 878, 27 L.Ed. 780; Gardner v. New Jersey, 329 U.S. 565, 574, 67 S.Ct. 467, 91 L.Ed. 504; Gunter v. Atlantic Coast Line R. Co., 200 U.S. 273, 284, 26 S.Ct. 252, 50 L.Ed. 477, and has often cited with approval the cases embodying that principle, see, e.g., College Savings Bank v. Florida Prepaid Postsecondary Ed. Expense Bd., 527 U.S. 666, 681, n. 3, 119 S.Ct. 2219, 144 L.Ed.2d 605. Here, Georgia was brought involuntarily into the case as a defendant in state court, **but it then voluntarily removed the case to federal court, thus voluntarily invoking that court's jurisdiction.** Unless this Court is to abandon the general principle requiring waiver or there is something special about removal in this case, the general principle should apply.

Here, the State of Louisiana was a removing party thereby consented to federal court jurisdiction.

The Supreme Court in Lapides v. Board of Regents of the University System of Georgia[27] found that where the Georgia's attorney general consented to removal of a professor's lawsuit for state and federal claims against the Georgia state university system and university officials, 11th Amendment immunity was thusly waived. Lapides, 535 U.S. at 616, 622, 122 S.Ct. 1640. Following removal, Georgia sought to invoke its sovereign immunity to dismiss the claims. Id. at 616–17, 122 S.Ct. 1640. The Supreme Court held that Georgia's voluntary invocation of federal jurisdiction by consenting to removal constituted waiver. Id. at 620–24, 122 S.Ct. 1640. In doing so, the Court rejected Georgia's

---

[27] Lapides v. Bd. of Regents of Univ. Sys. of Georgia, 535 U.S. 613, 616, 122 S. Ct. 1640, 1642, 152 L. Ed. 2d 806 (2002) ("The Eleventh Amendment grants a State immunity from suit in federal court by citizens of other States, U.S. Const., Amdt. 11, and by its own citizens as well, Hans v. Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). The question before us is whether the State's act of removing a lawsuit from state court to federal court waives this immunity. We hold that it does.").

argument that the attorney general did not have statutory authority to "waive the State's Eleventh Amendment immunity. . . even after it removed its case to federal court[.]" Lapides, 535 U.S. at 621–22, 122 S.Ct. 1640. The Court emphasized that "[a] rule of federal law that finds waiver through a state attorney general's invocation of federal-court jurisdiction avoids inconsistency and unfairness," as opposed to a rule that "denies waiver despite the state attorney general's state-authorized litigating decision." Id. at 623, 122 S.Ct. 1640. Lapides, likewise, controls here.

At first glance, under 28 USC § 1441(c)(2), it may appear that this Court is relegated to severing the state law negligence claim and vicarious liability claim against the DOC from the federal claim. This issue was addressed in Genusa v. Asbestos Corp., 18 F. Supp. 3d 773, 783 (M.D. La. 2014), that Court (Brady) wrote:

> Thus, the next inquiry is whether the alternative negligence claim and respondeat superior claim against the DOC are within the "supplemental jurisdiction" of this Court. Again, the Genusa, 18 F. Supp. 3d at 787, further addressed this issued writing:
>
> As discussed above, the court has original jurisdiction over the BRMC's claims against the Unions under 28 U.S.C. § 1331. The court will, therefore, "have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367. See Carnegie–Mellon Univ. v. Cohill, 484 U.S. 343, 349, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) ("[A] federal court has jurisdiction over an entire action, including state-law claims, whenever the federal-law claims and state-law claims in the case 'derive from a common nucleus of operative fact' and are 'such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding.' " (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)) (alteration in original)).

The removal by the State of Louisiana of this case from state court to federal court was a waiver of 11th Amendment immunity. There is no merit to any unpled claim of 11th Amendment immunity.

## CONCLUSION

Unfortunately, the State has pled several inapplicable defenses, which, as a matter of law, should be stricken on summary judgment including State filed *Answer* wherein it

asserted multiple inapplicable affirmative defenses at RD 9, at 5 of 8 including 1) no fault or negligence on be half of the State (¶ 30); 2) no fault on behalf of Cupil (¶ 31); 3) fault of third party and comparative fault (¶32); 4) sole fault of Albert Grayer (¶ 34); 5) failure to mitigate (¶ 35); 6) injuries caused by unrelated accident or cause (¶ 36); 7) immunity from liability by the state pursuant to La. R.S. 15:574.8 (¶ 37); 8) discretionary immunity pursuant to La. R.S. 92798.1 (¶ 39); 9) negligence of others pursuant to La. R.S. 9:2800 (¶ 40); and 10) any other immunity statute that the state has not pled, but that may apply (¶ 40).

Respectfully submitted:

s/ Donna U. Grodner
Donna U. Grodner (20840)
GRODNER & ASSOCIATES
2223 Quail Run, B-1
Baton Rouge, Louisiana 70808
(225) 769-1919 FAX (225) 769-1997
dgrodner@grodnerlaw.com

CERTIFICATE

I hereby certify that on July 13, 2026, a copy of the foregoing was filed and served electronically with the Clerk of Court using the CM/ECF system.

s/Donna Grodner
Donna U. Grodner (20840)